[Cite as *State v. Moore*, 2018-Ohio-3122.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| STATE OF OHIO, | : | |
| --- | --- | --- |
| Plaintiff-Appellee, | : | CASE NO. CA2017-11-023 |
| | : | O P I N I O N |
| - vs - | | 8/6/2018 |
| | : | |
| NORMAN E. MOORE, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20170203


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., Fayette County Courthouse, 110 East Court Street, Washington Court House, Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington Court House, OH 43160, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Norman E. Moore, appeals from the decision of Fayette County Court of Common Pleas denying his motions to dismiss and to suppress in a case where the trial court ultimately found Moore guilty of single counts of gross sexual imposition and rape after he entered a plea of no contest to both charges. For the reasons outlined below, we affirm.

{¶ 2} On April 4, 2017, Jane Doe, a minor, reported to the Fayette County Sheriff's Office that Moore, who at that time was her stepfather, had sexually assaulted her the previous day, April 3, 2017, by pulling up her shirt and "messing" with her breasts. The following day, April 5, 2017, Jane met with Sergeant E.A. Ward with the Fayette County Sheriff's Office, during which Jane provided Sergeant Ward with further details regarding this single incident, as well as generally alleging similar conduct had occurred "for about the past 9 months and happens at least once a week."[1] Jane also informed Sergeant Ward that Moore had "talked about her not being a snitch like her sister," Jill Doe, and "spoke about what he did 'with' her sister."[2] Jill, who was then 19 years old, had since moved out of the family home and was residing with her boyfriend.

{¶ 3} On April 7, 2017, the Fayette County Grand Jury returned an indictment charging Moore with one count of gross sexual imposition. It is undisputed that this indictment was based Jane's allegations regarding Moore's conduct she had reported to the Fayette County Sherriff's Office on April 4, 2017. Moore was thereafter arrested on April 12, 2017. The following week, on April 17, 2017, Moore appeared at his arraignment and entered a plea of not guilty to the single charged offense of gross sexual imposition against Jane. Since being arrested on April 12, 2017, there is no dispute that Moore had remained incarcerated in the Clinton County Jail at all times relevant.

{¶ 4} On April 19, 2017, a search warrant was issued for Moore's cell phone. The search warrant was supported by an affidavit submitted by Sergeant Ward who averred that Jane had since reported to him that Moore had repeatedly for the past nine months: (1) placed his hand inside her pants and touched her vagina, as well as her breasts and

---

1. The facts of this case are taken primarily from the Sergeant Ward's narrative statement submitted as part of his investigation into Moore's conduct giving rise to his conviction subject to this appeal.

2. For ease of discussion, the names of the two victims have been altered in an effort to conceal their respective identities.

buttocks, (2) asked her to have sex, to which she declined, (3) offered her money for oral sex, (4) "tried" to get her to send him photographs of her via cell phone, and (5) "asked" her to watch pornography on cell his phone, specifically "Stepfathers fucking Stepdaughters."

{¶ 5}  Sergeant Ward further averred that the most recent incident occurred on April 3, 2017, during which Jane alleged Moore had called her into his bedroom and "pulled up her shirt and was messing with her 'boobs.'"  The search of Moore's cell phone led to the discovery that Moore had conducted an internet search for "Step Dad Fucks Step Daughter Porn Video" on April 3, 2017, the same day Jane alleged Moore had pulled up her shirt and was "messing" with her breasts, as well as two previous internet searches on March 30, 2017 for "step dad fucking step dau (sic)."  Several images relating to stepfathers and stepdaughters were also discovered on Moore's cell phone, none of which contained any nudity.

{¶ 6}  On April 21, 2017, Jane submitted to a forensic interview regarding her and her sister Jill's interactions with Moore.  As part of this interview, Jane provided further, specific details regarding Moore's interactions with both her and her sister.  This included statements from Jane that Moore had over the past nine months touched her buttocks, breasts, and vagina.  "[S]tarted on the outside and then went in."  Jane also stated that Moore had told her Jill had sent nude photographs of herself to Moore, but that Jane herself did not send nor did she receive any photographs from Moore.  A follow up interview with Jane revealed still further incidents between Jane and Moore starting sometime in the summer of 2015, including cunnilingus and digital penetration of Jane's vagina.

{¶ 7}  On April 23, 2017, Jill also submitted to a forensic interview regarding her and her sister Jane's interactions with Moore.  During this interview, Jill stated that she was just nine years old when Moore started to sexually abuse her.  This included playing a "game" where Moore would tell Jill "to hide and he would come find her and touch her" on her chest

and vagina, both inside and outside. Jill also stated Moore had bribed her with money to send nude photographs of herself to him. According to Jill, "if she wouldn't [send the nude photographs to Moore] he would ground her or lie to mom to make mom ground her."

{¶ 8} Jill further stated that when she was between 11 and 12 years old that Moore would touch her daily, including digital penetration of her vagina. Jill alleged the sexual abuse finally stopped after she started her period sometime after she turned 13 years old. Although not clear, the record indicates Jill had previously complained about Moore's sexual abuse, which, according to Jill, eventually resulted in Moore being "put out of the house by Children's Service[.]" Unfortunately, Jill stated that she later recanted her accusations against Moore telling "them it was a lie, because her mom was hurt and she felt bad."

{¶ 9} Based on these new, specific allegations, on June 30, 2017, the Fayette County Grand Jury returned a 65-count indictment charging Moore with multiple counts of gross sexual imposition and rape resulting from his repeated, overt sexual abuse of his two stepdaughters, Jane and Jill. As alleged in the indictment, the nine charges involving Jane occurred between October of 2016 through April of 2017, whereas the 56 charges involving Jill occurred between September of 2007 through December of 2009.

{¶ 10} Approximately two weeks later, on July 10, 2017, Moore appeared at his arraignment and entered a plea of not guilty to all 65 charged offenses. Due to the filing of this new 65-count indictment, and in the interests of justice to "pursue only one case at this time," the state thereafter dismissed without prejudice the original indictment filed on April 7, 2017. The matter was then scheduled for a jury trial on August 22, 2017, which at Moore's request was rescheduled for September 27, 2017.

{¶ 11} On September 25, 2017, two days before the jury trial was scheduled to begin, Moore filed a motion for leave to file a motion to suppress outside of the trial court's time guidelines. That same day, before the trial court had an opportunity to rule on Moore's

motion for leave, Moore filed both a motion to dismiss and a motion to suppress. In support of his motion to dismiss, Moore claimed there had been a violation of his right to a speedy trial, thereby requiring all 65 charges then pending against him be dismissed. Specifically, Moore argued that "[b]ecause there was information available to the State concerning allegations contained in this case at the time [he was indicted for a single count of gross sexual imposition on April 7, 2017], a calculation of speedy trial should begin with [his] date of arrest on that case, April 12, 2017." On the other hand, in support of his motion to suppress, Moore claimed the search warrant issued for his cell phone was not supported by probable cause. Responding to Moore's motions, the state argued they should be denied since "both of these motions [were] a calculated trial tactic aimed at delay and serve no legitimate interest in justice."

{¶ 12} On September 26, 2017, the trial court held a hearing on Moore's motion for leave, during which Moore made an additional oral motion for a continuance of the jury trial scheduled to begin the next day, September 27, 2017. Over the state's objection, the trial court granted Moore's motions for leave and for a continuance upon finding it was necessary to continue the jury trial to address Moore's motions to dismiss and to suppress. The trial court then scheduled a hearing on Moore's motions for October 3, 2017, whereas the jury trial was rescheduled for October 19, 2017. Moore then executed a written waiver of his right to speedy trial, thereby waiving his speedy trial rights up to and including when the jury trial was scheduled to begin on October 19, 2017.

{¶ 13} On October 3, 2017, the parties appeared before the trial court for the hearing on Moore's motions. No testimony or evidence was presented at this hearing, only arguments from both parties. At the conclusion of this hearing, the trial court issued a decision from the bench denying Moore's motion to suppress. In so holding, the trial court found Moore had "failed to establish a procedural defect" in the issuance of the search

warrant. The trial court also found, based upon its review of the affidavit submitted by Sergeant Ward, there was sufficient information to justify a finding of probable cause to search Moore's cell phone. Specifically, as the trial court stated, "[t]he Court finds nothing unreasonable or constitutionally infirm with the warrant process, overrules the motion to suppress in each and every particular." The trial court thereafter issued a written entry overruling Moore's motion to suppress "for the reasons set forth on the record."

{¶ 14} As it relates to the trial court's decision on Moore's motion to dismiss, the trial court took the matter under advisement noting that it would issue a decision on the matter in due course after accepting additional memoranda from both parties outlining their respective positions. Thereafter, at a subsequent hearing, the trial court issued its decision from the bench denying Moore's motion to dismiss. In so holding, the trial court found "the re-indictment started the clock over because it did not, it had other facts and allegations, contained in indictment number 1." Although stating it would "be reducing that to a written form," the trial court never issued a written entry denying Moore's motion to dismiss.

{¶ 15} On October 18, 2017, the day before the jury trial was scheduled to begin, Moore entered into a plea agreement with the state, wherein he agreed to plead no contest to single counts of rape and gross sexual imposition regarding his repeated, overt sexual abuse of his two stepdaughters, Jane and Jill. In exchange for Moore's no contest plea, the state agreed to dismiss the remaining charges and recommend Moore be sentenced to a total of eight years in prison, four years for each count. After conducting the necessary Crim.R. 11 plea colloquy, the trial court accepted Moore's no contest plea and found Moore guilty of the single counts of rape and gross sexual imposition as charged.

{¶ 16} Upon finding Moore guilty, the trial court then sentenced Moore to the recommended total aggregate eight-year prison term. The trial court also notified Moore that he would be subject to a mandatory five-year period of postrelease control, that he

would be classified as a tier III sex offender, and that he would be given 188 days of jail-time credit. It is undisputed the 188 days of jail-time credit corresponds to the amount of days Moore had been incarcerated since being arrested on April 12, 2017 following the issuance of the original April 7, 2017 indictment.

{¶ 17} Moore now appeals, raising two assignments of error for review.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ERRED IN DENYING MOORE'S MOTION TO DISMISS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY SECTION 10, ARTICLE I [OF] THE OHIO CONSTITUTION.

{¶ 20} In his first assignment of error, Moore argues the trial court erred by denying his motion to dismiss wherein he alleged a violation of his right to a speedy trial. We disagree.

{¶ 21} Cases involving subsequent or multiple indictments, such as the case here, can be problematic with respect to the issue of speedy-trial rights. *State v. North*, 12th Dist. Butler No. CA2016-06-119, 2017-Ohio-492, ¶ 24, citing *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 23. The Ohio Supreme Court has issued several opinions to clarify when the speedy-trial timetable runs on multiple indictments. For instance, in *State v. Adams*, 43 Ohio St.3d 67, 65-69 (1989), the Ohio Supreme Court held that where "new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge." (Internal quotation marks omitted.)

{¶ 22} However, as the Ohio Supreme Court later explained in *State v. Baker*, 78 Ohio St.3d 108 (1997), syllabus, "[i]n issuing a subsequent indictment, the state is not

subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, *or* the state did not know of these facts at the time of the initial indictment." (Emphasis added.) Therefore, as noted by the Ohio Supreme Court in *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, ¶ 20, "the holdings of *Baker* and *Adams* * * * combined, stand for the proposition that speedy-trial time is not tolled for the filing of later charges that arose from the facts of the criminal incident that led to the first charge."

{¶ 23} Relying on the Ohio Supreme Court's holding in *Baker*, Moore initially argues that because the trial court granted him 188 days of jail-time credit from the time he was arrested on April 12, 2017 for the original April 7, 2017 indictment rather than starting the calculation of his jail-time credit when the June 30, 2017 indictment was issued, the trial court "found" the two cases "related" yet failed to apply the applicable try-by date as it relates to the original April 7, 2017 indictment. The trial court, however, made no such finding. Instead, as the trial court found when issuing its decision from the bench denying Moore's motion to dismiss, "the re-indictment started the clock over because it did not, it had other facts and allegations, contained in indictment number 1." There is nothing in the record to indicate the trial court somehow "changed its mind and found the two indictments related" as Moore now suggests. This is true despite the fact the trial court never issued a written entry denying Moore's motion to dismiss.[3] Simply stated, despite no written entry being issued, it is clear the trial court denied Moore's motion to dismiss for the reasons stated on the record, which did not include a finding that the two cases were in any way related. Moore's argument to the contrary lacks merit.

---

3. The trial court may have erred in Moore's benefit by granting him 188 days of jail-time credit, see R.C. 2929.19(B)(2)(g)(i) (requiring the trial court to determine "the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced"), but that issue is not properly before this court.

{¶ 24} Relying again on the Ohio Supreme Court's holding in *Baker*, Moore next argues the state was bound to the speedy-trial timetable of the original April 7, 2017 indictment since the state knew of the facts giving rise to the subsequent June 30, 2017 indictment at the time the original April 7, 2017 indictment was issued. In support, Moore points to Sergeant Ward's narrative statement regarding his meeting with Jane on April 5, 2017, during which Jane provided Sergeant Ward with further details regarding Moore's conduct in "messing" with her breasts on April 3, 2017, as well as generally alleging similar conduct had occurred "for about the past 9 months and happens at least once a week." As noted above, during this meeting, Jane also informed Sergeant Ward that Moore had "talked about her not being a snitch like her sister," Jill, and "spoke about what he did 'with' her sister." Therefore, according to Moore, this proves the state knew "about all of Moore's course of conduct" in sexually abusing both Jane and Jill at the time the original April 7, 2017 indictment was issued.

{¶ 25} Moore's application of the Ohio Supreme Court's holding in *Baker* is flawed. As noted above, the Ohio Supreme Court in *Baker* held as part of its syllabus, "[i]n issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, *or* the state did not know of these facts at the time of the initial indictment." (Emphasis added.) Due to the Ohio Supreme Court's use of the conjunctive "or," even if we were to agree with Moore that the state knew of the facts giving rise to the subsequent June 30, 2017 indictment at the time the original April 7, 2017 indictment was issued, which we do not, there is no question that the 65 charges of rape and gross sexual imposition brought in the June 30, 2017 indictment arise from facts that are markedly different than the single gross sexual imposition charge brought as part of the original April 7, 2017

- 9 -

indictment.[4]

**{¶ 26}** Unlike the original April 7, 2017 indictment charging Moore with a single count of gross sexual imposition for his conduct on April 3, 2017 in "messing" with Jane's breasts, the June 30, 2017 indictment charged Moore with 65 counts of gross sexual imposition and rape resulting from his repeated, overt sexual abuse of his two stepdaughters, Jane and Jill. Again, as alleged in the June 30, 2017 indictment, the nine charges involving Jane occurred between October of 2016 through April of 2017, whereas the remaining 56 charges involving Jill occurred between September of 2007 through December of 2009. These 65 charges are wholly separate and apart from Moore's conduct in "messing" with Jane's breasts on April 3, 2017 giving rise to the issuance of the original April 7, 2017 indictment.

**{¶ 27}** Therefore, in applying the Ohio Supreme Court's holding in *Baker* to the case at bar, because the charges giving rise to the June 30, 2017 indictment arise from facts wholly different from the charge brought in the original April 7, 2017 indictment, it is clear that the state was not subject to the speedy-trial timetable of the original April 7, 2017 indictment. Moore's claim otherwise lacks merit. Accordingly, because we find no error in the trial court's decision denying Moore's motion to dismiss, Moore's first assignment of error is overruled.

---

4. Although unnecessary to our analysis in this case, we disagree with Moore's claim alleging the state knew of the facts giving rise to the June 30, 2017 indictment at the time of the original April 7, 2017 indictment was issued. Rather, after a full and thorough review of the record, we find the state had, at best, a cursory knowledge of Moore's conduct regarding his repeated, overt sexual abuse of his two stepdaughters, Jane and Jill, at the time the original April 7, 2017 indictment was issued. The details of such abuse, however, were not learned until after the April 7, 2017 indictment was issued. Because the 65 charges brought as part of the June 30, 2017 indictment were based on additional, specific facts that were revealed through further investigation, rather than on facts that were known by the state at the time the original April 7, 2017 indictment was issued, the Ohio Supreme Court's decision in *Baker* is inapplicable to the case at bar. *See, e.g., State v. Davenport*, 12th Dist. Butler No. CA2005-01-005, 2005-Ohio-6686, ¶ 13 (speedy-trial timetable of appellant's initial arrest did not apply to subsequent arrest since law enforcement merely suspected they would find evidence of child pornography on appellant's computer, but "did not have sufficient probable cause at the time of his arrest to charge him with those crimes").

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED IN DENYING MOORE'S MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 30} In his second assignment of error, Moore argues the trial court erred by denying his motion to suppress the search of his cell phone. In support of this claim, Moore argues the search warrant affidavit submitted by Sergeant Ward in this case was insufficient to establish the requisite probable cause necessary for the issuance of the search warrant. We disagree.

{¶ 31} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10. "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 12, quoting *Burnside* at ¶ 8.

{¶ 32} In determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances. *State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 19, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 13. As it relates to whether

- 11 -

a search warrant affidavit was sufficient to establish probable cause, the duty of the judge or magistrate issuing the search warrant is to make "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Risner*, 12th Dist. Preble No. CA2017-06-007, 2018-Ohio-1569, ¶ 18, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. The issuing judge or magistrate is confined to the averments contained in the affidavit supporting the issuance of the search warrant. *State v. Swift*, 12th Dist. Butler No. CA2013-08-161, 2014-Ohio-2004, ¶ 16. Therefore, it is "essential that an affidavit for a search warrant include facts establishing probable cause that the items sought to be searched for and seized are related to the commission of some crime." *J.A.C.* at ¶ 18.

{¶ 33} On appeal, rather than conducting a de novo review as to whether the search warrant affidavit provided sufficient probable cause, *see State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 24, it is this court's limited duty to ensure the judge or magistrate issuing the search warrant had a substantial basis for concluding probable cause existed based on the information contained within the four corners of the affidavit filed in support of the search warrant. *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 21. In reaching such a decision, this court must afford great deference to the trial court's decision "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 14. This court should therefore "not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317 (1983).

{¶ 34} Moore argues the trial court erred by denying his motion to suppress because

the search warrant affidavit "only" alleged his cell phone contained pornography, "which it is not a crime to possess." We agree that it is not a crime to view or even possess pornography between consenting adults. However, as noted above, the search warrant affidavit included significantly more allegations than what Moore suggests. These allegations included claims from Jane, one of the two victims in this case, that Moore had (1) placed his hand inside her pants and touched her vagina, as well as her breasts and buttocks, (2) asked her to have sex, to which she declined, (3) offered her money for oral sex, (4) "tried" to get her to send him photographs of her via cell phone, and (5) "asked" her to watch pornography on cell his phone, specifically "Stepfathers fucking Stepdaughters." These allegations, when examined in the totality of the circumstances, were sufficient to establish probable cause to issue a search warrant for Moore's cell phone as part of the Fayette County Sheriff's Office investigation into Moore's conduct; specifically, evidence of the commission of gross sexual imposition against Jane, one of his then two stepdaughters.

{¶ 35} Moore nevertheless argues the trial court's decision denying his motion to suppress was in error since the search warrant affidavit stated only that he had "tried" to get Jane to send him photographs of her via cell phone and merely "asked" Jane to watch pornography on his cell phone. Therefore, according to Moore, it is "obvious" that he "failed" in his efforts to get Jane to send him the requested photographs via cell phone or to get Jane to watch pornography on his cell phone, thereby leaving little doubt that his cell phone did not contain any evidence of the commission of gross sexual imposition.

{¶ 36} Moore is putting the cart before the horse. As noted by the state, "it is only after obtaining the mobile telephone that it could be determined if evidence was or was not on the mobile telephone." We agree. Therefore, because the allegations included within Sergeant Ward's search warrant affidavit were sufficient to establish probable cause to issue a search warrant for Moore's cell phone as part of the investigation into Moore's

conduct; specifically, evidence of the commission of gross sexual imposition against Jane, one of his then two stepdaughters, Moore's second assignment of error lacks merit and is overruled.

{¶ 37} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.