[Cite as *State v. Nelson*, 2018-Ohio-2819.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-08-042 |
| Plaintiff-Appellee, | : | O P I N I O N<br>7/16/2018 |
| | : | |
| - vs - | : | |
| | : | |
| NICHOLAS NELSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016 CR 00639

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 2nd Floor, 76 South Riverside Drive, Batavia, OH 45103, for plaintiff-appellee

Nicholas Nelson, #A736635, Correctional Reception Center, 11271 State Route 762 Orient, OH 43146, defendant-appellant, pro se

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Nicholas Nelson, appeals a decision of the Clermont County Court of Common Pleas denying his motion to suppress.

{¶ 2} On October 27, 2016, law enforcement officers executed a search warrant in Room 109 at the Red Roof Inn in Cincinnati, Ohio. Room 109 was appellant's hotel room. The search warrant was predicated upon an affidavit filed the same day by Agent Bryan

Taylor, a Union Township police officer and member of the Clermont County Narcotics Task Force.

{¶ 3} In his affidavit, Agent Taylor stated that he and other Union Township police officers were working in plain clothes in the vicinity of the Red Roof Inn earlier that day. Around 6:00 p.m., Agent Taylor observed appellant leave the Red Roof Inn office and walk to the rear of the building (the "office building"), where Room 109 is located. A few minutes later, Agent Taylor observed a black Dodge Charger pull from behind the office building and park behind a second building belonging to the hotel.[1] Appellant subsequently walked from the Dodge back to the rear of the office building. A short time later, Agent Taylor observed appellant walk back to the Dodge and then back to the rear of the office building. Finding this activity suspicious, Agent Taylor moved to the rear of the second building, where the Dodge was parked. Two other plain clothes police officers initiated surveillance from a nearby McDonald's Restaurant.

{¶ 4} Sometime later, Agent Taylor observed a black Honda pull in and park next to the Dodge. Subsequently, appellant emerged from the rear of the office building and entered the hotel laundry room with a woman later identified as Christina Richardson. The hotel laundry room is located in the second building where the Dodge and Honda were parked. A short time later, appellant and Richardson exited the laundry room and went separate ways. Richardson entered the rear passenger seat of the Honda and the Honda left the hotel.

{¶ 5} Subsequently, a uniformed canine police officer initiated a traffic stop of the

---

1. For readability purposes, we note that an aerial-view photograph of the hotel shows that the two buildings are perpendicular to one another. There is a breezeway between the two buildings. As described earlier, the hotel office and Room 109 are in the same building. The photograph was used during the suppression hearing but was not submitted with the search warrant affidavit. *See State v. Graddy*, 55 Ohio St.2d 132, 134 (1978), fn. 1 (appellate review of the sufficiency of warrant affidavits under the Fourth Amendment encompasses only information brought to the attention of the issuing magistrate or judge).

Honda for driving left of center. The canine unit alerted to the presence of narcotics in the Honda. By that time, Agent Taylor was on the scene of the traffic stop. Richardson admitted to Agent Taylor that she had gone to the hotel to purchase crack cocaine and heroin for the Honda's driver. The Honda's driver admitted having heroin and cocaine inside her vagina. She then produced two bags which field tested positive for cocaine and heroin, respectively.

{¶ 6} While the traffic stop of the Honda was in progress, appellant was observed walking to the Dodge and driving out of the hotel parking lot. A traffic stop of the Dodge was initiated approximately 50 yards from where the Honda was stopped. The canine unit alerted to the presence of narcotics in the Dodge. A search of the vehicle yielded two cellphones and a digital scale. Richardson confirmed at the scene that appellant was the person from whom she had purchased the drugs. At the request of Agent Taylor, Richardson gave him the phone number she had used to contact appellant prior to the drug sale. Using a blocked caller I.D. number, Agent Taylor dialed the phone number provided by Richardson and walked over to the traffic stop of the Dodge. One of the cellphones in appellant's car began to ring, displaying a blocked caller I.D. number.

{¶ 7} During questioning, appellant advised Agent Taylor that "he could get an ounce of anything we wanted." Appellant had a Red Roof Inn key in his pocket. Appellant claimed he was staying in Room 117 at the Red Roof Inn. However, the hotel office staff advised the police that appellant was registered in Room 109.

{¶ 8} The affidavit stated that appellant had a criminal history that included trafficking in drugs and cocaine, and that the Union Township Police Department was holding Room 109 and not allowing anyone to enter the room.

{¶ 9} The affidavit further stated that Agent Taylor had been a police officer for nine years and on the Clermont County Narcotics Task Force for a year, and that he was trained in the detection and investigation of suspected drug offenders. Agent Taylor averred that

in his experience, it is common for drug traffickers to possess packaging materials to facilitate drug sale and scales, including digital scales, to weigh drugs. Agent Taylor further averred that it is common for drug traffickers to hide drugs, contraband, drug sale proceeds, drug transaction records, and drug customer lists in secure locations within their residences, offices, garages, automobiles, storage buildings, safes, and safe deposit boxes to avoid detection. Based upon his training and experience and the facts described in the affidavit, Agent Taylor stated there was probable cause to believe that drugs and evidence of drug trafficking were concealed in Room 109 at the Red Roof Inn.

{¶ 10} Based upon the affidavit, the Clermont County Municipal Court issued a search warrant for Room 109. The search yielded a bag of marijuana, a bag of a tan substance, a digital scale, two cellphone chargers, and a "torn plastic piece."

{¶ 11} Appellant was subsequently indicted on three counts of trafficking in heroin, two counts of trafficking in cocaine, and one count of cocaine possession. Appellant moved to suppress the evidence seized in his hotel room, arguing that Agent Taylor's affidavit contained insufficient facts to establish probable cause to issue the search warrant. The trial court held a hearing on the motion; Agent Taylor testified on behalf of the state.

{¶ 12} On May 1, 2017, the trial court denied appellant's motion to suppress, finding that the warrant to search appellant's hotel room for drug trafficking evidence was supported by probable cause. Specifically, the trial court found that given the police officers' observation of drug activity near appellant's hotel room, appellant's lie regarding his room number, his status as a known drug dealer, and Agent Taylor's training in narcotics detection and investigation and his averment that evidence of drug trafficking is commonly hidden in secure places such as a residence, the affidavit in support of the search warrant "contains sufficient information to allow the issuing judge to draw the conclusion that evidence of drug trafficking was likely to be found in the defendant's hotel room at the Red

- 4 -

Roof Inn." The trial court further found that "even if there was not sufficient probable cause for the issuing judge to issue the search warrant, the good faith exception to the exclusionary rule applie[d], thus allowing the evidence seized from Room 109 to be admitted at trial."

{¶ 13} Appellant subsequently entered a no contest plea to one count of trafficking in heroin as a felony of the fifth degree with a forfeiture specification, and one count of trafficking in heroin as a felony of the second degree. The trial court accepted his plea and sentenced him to an aggregate nine-year prison term.

{¶ 14} Appellant now appeals, raising one assignment of error:

{¶ 15} THE TRIAL COURT INCORRECTLY DECIDED THE ULTIMATE OR FINAL ISSUE ON WHETHER THERE WAS ENOUGH FACTS TO SUPPORT PROBABLE CAUSE.

{¶ 16} Appellant argues that the trial court erred in denying his motion to suppress the evidence seized from his hotel room. Specifically, appellant asserts that Agent Taylor's affidavit failed to establish a sufficient nexus between appellant's illegal activity and his hotel room to allow a search of his room. Appellant further challenges the trial court's application of the good faith exception to the exclusionary rule.

{¶ 17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 16. Thus, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and

determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 18} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the judge or magistrate issuing the warrant is to simply "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus; *J.A.C.* at ¶ 18.

{¶ 19} In determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 13. The duty of a reviewing court is simply to ensure that the issuing judge or magistrate had a substantial basis for concluding that probable cause existed based on the information contained in the four corners of the affidavit filed in support of the warrant. *Id.*; *J.A.C.* at ¶ 19. Accordingly, this court does not determine de novo whether the affidavit provided sufficient probable cause. *State v. Risner*, 12th Dist. Preble No. CA2017-06-007, 2018-Ohio-1569, ¶ 18. Rather, in conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Jones* at ¶ 14.

{¶ 20} Upon reviewing Agent Taylor's affidavit, we find that it provided a clear nexus between appellant's alleged drug trafficking and his hotel room, and thus contained sufficient evidence to support a probable cause finding justifying the issuance of the search

warrant.

{¶ 21} Before Richardson arrived at the Red Roof Inn to purchase drugs, the police observed appellant engage in suspicious activity by parking his car away from his hotel room and subsequently walking back and forth between his car and the rear of the office building, where his hotel room was located. Shortly after the Honda parked next to appellant's car, appellant emerged from the rear of the office building and entered the hotel laundry room, located in the other building, with Richardson. A short time later, the two exited the laundry room and went separate ways. Following the traffic stop of the Honda, Richardson admitted to Agent Taylor that she had gone to the hotel to purchase crack cocaine and heroin for the Honda's driver, identified appellant as the person who sold her the drugs, and gave Agent Taylor the phone number she had used to contact appellant prior to the drug sale. Crack cocaine and heroin were found in the possession of the Honda's driver. The phone number provided by Richardson was found to be the phone number of one of the two cellphones found in appellant's car. Also found in appellant's car was a digital scale.

{¶ 22} During questioning, appellant advised Agent Taylor that "he could get an ounce of anything we wanted." Appellant lied about which hotel room he was using as his residence. The affidavit further described Agent Taylor's training in narcotics detection and investigation and stated that in Agent Taylor's experience, drug dealers typically keep evidence of their drug trafficking in their residence. At the time Agent Taylor sought a warrant to search appellant's hotel room, he knew that appellant was a drug dealer with prior convictions for trafficking in drugs and cocaine.

{¶ 23} The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence. *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶

26. A "'nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence.'" *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 14, quoting *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008). Thus, such nexus exists when the search warrant affidavit describes the investigating law enforcement officer's experience in narcotics investigation, the officer's averment that drug dealers typically keep drugs in their homes, and the officer's observation of the defendant visiting his residence right before he traveled to the site of a drug sale. *Gunter* at 419.

{¶ 24} It was reasonable to infer that in the course of his comings and goings between his car and the rear of the office building where Room 109 was located, as observed by the officers, appellant brought drugs to Richardson. *State v. Terrell*, 2d Dist. Clark No. 2016-CA-32, 2017-Ohio-7097, ¶ 61; *Gunter* at 419. Notwithstanding appellant's argument to the contrary, his possession of two cellphones and a digital scale indicated drug trafficking activity, for otherwise innocuous items such as cellphones and digital scales can be used as criminal tools in drug trafficking and may constitute circumstantial evidence of drug trafficking. *Terrell* at ¶ 61; *State v. Hawthorne*, 8th Dist. Cuyahoga No. 102689, 2016-Ohio-203, ¶ 21; *State v. Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 10. Appellant's lie about his hotel room further indicated the potential presence of contraband in the hotel room which appellant sought to conceal. *Id.*; *United States v. Caicedo*, 85 F.3d 1184 (6th Cir.1996).

{¶ 25} For the foregoing reasons, and deferring to the issuing judge's determination of probable cause, we find that the issuing judge had a substantial basis for concluding that probable cause existed in support of issuing a search warrant for Room 109. Accordingly, we need not address appellant's argument regarding the good faith exception. *Terrell* at ¶ 62.

{¶ 26} We therefore find that the trial court did not err in denying appellant's motion to suppress the evidence found in his hotel room. Appellant's assignment of error is overruled.

{¶ 27} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.