[Cite as *State v. Sullivan*, 2019-Ohio-2279.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-10-016 |
| | : | O P I N I O N |
| - vs - | | 6/10/2019 |
| | : | |
| JAMES A. SULLIVAN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 17-CR-12514

Martin P. Votel, Preble County Prosecuting Attorney, 101 E. Main St., First Floor, Eaton, Ohio 45320, for appellee

Samuel D. Borst, 3247 Camden Road, Eaton, Ohio 45320, for appellant

**PIPER, J.**

{¶ 1} James A. Sullivan appeals the decision of the Preble County Court of Common Pleas, which denied his motion to suppress evidence obtained by police in a search of his vehicle following a traffic stop. For the reasons discussed below, this court affirms the trial court's decision.

{¶ 2} A Preble County grand jury indicted Sullivan for six felony and misdemeanor drug-related offenses, including aggravated trafficking in methamphetamine, trafficking heroin, possession of heroin, and drug paraphernalia. The charges stemmed from a traffic stop in Eaton, Ohio. During the stop, a drug-sniffing K9 alerted to the odor of narcotics in Sullivan's vehicle. In the subsequent search of the vehicle and its contents, police discovered a large crystal of methamphetamine and a large quantity of heroin located in a locked tool box.

{¶ 3} Before trial, Sullivan moved to suppress the evidence seized as a result of the stop and search of his vehicle. At the suppression hearing, Officer Luke Baker testified that he was patrolling in his vehicle on November 11, 2017 when he saw Sullivan's vehicle. Officer Baker evidently had previously received information that Sullivan was suspected of drug activity. Part of this information was that Sullivan had been observed coming and going from multiple drug houses carrying a large red tool box and, upon his departure from the various locations, drug activity at the houses increased. From the information received, Officer Baker deduced that Sullivan was using the large red tool box to transport narcotics.

{¶ 4} Office Baker followed Sullivan's vehicle as it turned onto East Decatur Street. He observed the vehicle approach a stop sign at the intersection of East Decatur and Wayne Avenue. Sullivan's vehicle never came to a complete stop at the intersection and "rolled through" the stop sign as it turned onto Wayne Avenue. Having observed a traffic infraction, Officer Baker activated his lights and pulled over the vehicle.

{¶ 5} Officer Baker approached Sullivan's vehicle and observed that Sullivan was the driver. He greeted Sullivan because he had had previous contacts with him. Officer Baker also recognized Sullivan's passenger as another individual who frequented drug houses. Officer Baker informed Sullivan of the stop sign violation, and then returned to his patrol

vehicle. He requested that dispatch run a check on Sullivan's driver's license information. Officer Baker also requested a K9 officer.

{¶ 6} A few minutes later, Officer Craig Jones arrived at the traffic stop with his K9, Shadow. Officer Jones testified that he had Shadow perform an exterior drug sniff for narcotics, beginning at the rear passenger side of the car. He further testified that Shadow almost immediately indicated the presence of narcotics, focusing on the seam between the two passenger-side doors.

{¶ 7} After Shadow's positive indication, Officer Baker removed Sullivan and his passenger from the vehicle to perform a search for narcotics. He located a methamphetamine pipe in the center console. He removed a red tool box, which was locked with a combination lock. The tool box was located behind the driver seat on a folded-down seat. Sullivan told officers he did not know the combination to the lock, but that it was at his home. Officer Jones broke the lock and opened the tool box, locating the contraband.

{¶ 8} Officer Baker testified that an average traffic stop would last 15 to 18 minutes and involved speaking with the driver, identifying the driver, verifying the driver's license and vehicle registration, and writing and delivering the citation. In this respect, the state submitted a video recording of the traffic stop, captured by a camera mounted in Officer Baker's patrol vehicle ("cruiser cam"). The cruiser cam footage shows that Officer Baker returned to his patrol vehicle approximately one minute and thirty seconds after initially pulling Sullivan over. He then called for K9 support. Officer Jones and Shadow arrived on scene approximately three and one-half minutes after the stop initiated. Shadow performed the drug sniff approximately five minutes after the initial stop.

{¶ 9} In moving to suppress the evidence, Sullivan argued that Officer Baker lacked probable cause to stop him because the cruiser cam footage showed that he stopped at the stop sign. Sullivan further argued that the footage demonstrated that Shadow did not

- 3 -

indicate the presence of drugs. The lower court rejected both arguments, finding that the cruiser cam footage corroborated Officer Baker's testimony that Sullivan rolled through the intersection and that the footage was "neutral" as to whether Shadow indicated i.e., it neither confirmed nor denied that the K9 indicated.

{¶ 10} Following the court's denial of his motion, Sullivan submitted pleas of "no contest" to the indicted offenses. The court found him guilty and imposed a prison sentence. Sullivan raises a single assignment of error in this appeal.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IT ERRED IN ITS FACTUAL DETERMINATION(S) THAT THE DEFENDANT-APPELLANT FAILED TO STOP FOR A STOP SIGN AND/OR THAT THE DRUG DOG ALERTED TO HIS VEHICLE, AND IN DENYING HIS MOTION TO SUPPRESS EVIDENCE/MOTION IN LIMINE BASED THEREON, WHEN VIDEO EVIDENCE OF THE STOP, DETENTION, AND SEARCH CONFIRMS OTHERWISE, AND THE STATE FAILED TO SUSTAIN ITS BURDEN OF PERSUASION REGARDING AN ILLEGAL STOP, DETENTION AND/OR ILLEGAL SEARCH.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Nelson*, 12th Dist. Clermont No. CA2017-08-042, 2018-Ohio-2819, ¶ 17. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's

decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 14} Sullivan argues, based on his interpretation of the cruiser cam footage, that the greater weight of the evidence indicated that he did stop at the stop sign. He also challenges Officer Baker's ability to observe whether he stopped or rolled through the intersection.

{¶ 15} The cruiser cam footage depicts Sullivan's vehicle approaching the intersection and signaling a right turn. The vehicle's brake lights appear to turn on very briefly, just under three seconds, while the vehicle appears to be moving into the intersection. The cruiser cam footage is consistent with Officer Baker's claim that Sullivan did not come to a complete stop. And given that the "rolling stop" can be perceived from a camera recording, Sullivan's argument that Officer Baker could not have observed the traffic infraction lacks merit. Thus, competent, credible evidence supported the trial court's factual finding that Sullivan committed a traffic violation, thus permitting the stop.

{¶ 16} Sullivan also argues that the court lost its way in concluding that Shadow indicated the presence of narcotics. During the hearing, Officer Jones testified that he was a certified canine handler and that he observed Shadow indicate the presence of narcotics. After giving the search command, Officer Jones watched Shadow slow his pace and then sniff heavily at the seam between the passenger-side doors. Officer Jones testified that this behavior meant that Shadow was "in odor but hasn't located the source yet." Then Shadow gave his "final response" indicating the presence of narcotics, which was to sit, and Officer Jones ended the search.

{¶ 17} Sullivan argues that the cruiser cam footage contradicts Officer Jones' testimony because it does not show Shadow sitting. This court agrees with the trial court's assessment that the cruiser cam footage is not conclusive, one way or the other, as to whether Shadow gave a final response by sitting. Shadow does appear to approach the

passenger side door with focus, corroborating Officer Jones' claim that Shadow was "in odor." However, Shadow's body is not visible in the final moments of the drug sniff because of the angle of the cruiser cam. Even so, his tail remains visible during this time and it does appear that the tail may briefly lower to indicate a lowering of the dog's body as if sitting. Thus, contrary to Sullivan's argument, the footage by inference, appears to corroborate, rather than contradict, Officer Jones' testimony.

{¶ 18} In sum, the trial court found Officer Jones credible and the cruiser cam footage does not cause this court to second-guess the lower court's factual finding. Accordingly, the testimony and cruiser cam footage is competent, credible evidence supporting the trial court's finding that Shadow alerted to the presence of narcotics in the vehicle.

{¶ 19} Next, Sullivan argues that Officer Baker unconstitutionally extended the traffic stop to allow Officer Jones and Shadow to arrive and conduct the drug sniff. "An officer may conduct a canine sniff of a vehicle during the time required to effectuate a traffic stop, including the time it takes to write a traffic citation." *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 22. Officer Baker testified that a typical traffic stop resulting in the issuance of a citation would last 15 to 18 minutes. Officer Jones and Shadow arrived minutes after the stop and the drug sniff took place approximately 5 minutes after the stop initiated. The sniff took place well within the time required to write a traffic citation and Officer Baker did not unconstitutionally extend the stop.

{¶ 20} Finally, Sullivan argues that the search of the locked tool box was unconstitutional as there was no exigency and Officer Baker could have obtained a search warrant. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require a police officer to first obtain a warrant based upon probable cause before conducting a search. However, the warrant requirement is subject to certain exceptions, including the "automobile exception," which provides that warrantless searches

of motor vehicles are permitted if police have probable cause to believe that the vehicle contains evidence relevant to a crime and that exigent circumstances exist necessitating a search or seizure. *Carroll v. United States*, 267 U.S. 132, 149 (1925). The mobility of automobiles creates the exigent circumstance and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066 (1985); *State v. Mills*, 62 Ohio St.3d 357, 367 (1992).

{¶ 21} The automobile exception also allows for the warrantless search of packages and containers in a vehicle that could contain items for which officers have probable cause to search. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157 (1982). The Court explained, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. Moreover, police officers are permitted to examine packages and containers "without a showing of individualized probable cause for each one." *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S.Ct. 1297 (1999). Probable cause to search a vehicle and its contents exists where a narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle." *State v. French*, 104 Ohio App.3d 740, 749 (12th Dist.1995).

{¶ 22} The Ohio Supreme Court has held that the automobile exception allowed for the warrantless search of two sealed postal service envelopes located inside an open box found in a suspect's car. *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002. The investigating officer had smelled a strong odor of marijuana emanating from the vehicle. *Id.* at ¶ 2. In the ensuing warrantless search, the officer located marijuana buds, loose marijuana "shake," items indicative of drug trafficking, and the two sealed envelopes, which he opened, revealing additional contraband. *Id.* at ¶ 3, 5. The court held that the officer had probable cause to search based on the smell of marijuana and the items indicating drug

trafficking and lawfully opened the sealed envelopes based upon the United State Supreme Court's holding in *Ross*. *Id.* at ¶ 16.

{¶ 23} This court concludes that the warrantless search of the locked tool box was legally permissible. Officer Baker had probable cause to believe the vehicle contained illegal narcotics based on Shadow's alert to the odor of narcotics. Probable cause is further supported by Officer Baker's suspicion of Sullivan's activity in drug trafficking. This information was verified by the presence of a large red tool box in the vehicle. Moreover, pursuant to *Vega*, there was no issue with the police searching the locked tool box as police have the right to search any container or package in the vehicle that may conceal the suspected contraband regardless of whether it had been secured in some fashion.

{¶ 24} Sullivan argues that no exigent circumstance existed and Officer Baker could have obtained a search warrant for the tool box. However, police were not required to obtain a search warrant once probable cause existed to search the vehicle, which would also include contents that may conceal narcotics. The exigency present was the mobility of Sullivan's vehicle and the potential destruction of evidence or contraband if not seized. *Carroll*; *California*. This court overrules Sullivan's sole assignment of error.

{¶ 25} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.