[Cite as *State v. Reedijk*, 2021-Ohio-2879.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-12-086 |
| | : | O P I N I O N |
| - vs - | | 8/23/2021 |
| | : | |
| LUCAS REEDIJK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35851

David P. Fornshell, Warren County Prosecuting Attorney, and Adam M. Nice, Assistant Prosecuting Attorney, for appellee

Brock A. Schoenlein; Kruger & Hodges, LLC, and Scott D. Kruger and Joshua D. Hodges, for appellant

**PIPER, P.J.**

{¶ 1}   Lucas Reedijk appeals his conviction in the Warren County Court of Common Pleas for multiple drug-related offenses.[1]

{¶ 2}   A special agent of the Ohio Bureau of Criminal Investigation was assigned to

---

1. According to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for the purpose of issuing this opinion.

the Warren County Drug Task Force and began an investigation into Evan Sherman for trafficking in ecstasy. After multiple undercover controlled purchases from Sherman, the agent arranged an additional purchase. When deciding upon a date for the sale, Sherman informed the undercover agent that his supplier would be in Ohio from Michigan soon, and the two chose a date to meet after the supplier's return to the area. Prior to the date of the arranged sale, the task force surveilled Sherman to learn the identity of his supplier.

{¶ 3} During the surveillance, a task force detective observed Sherman move his vehicle to the center of a parking lot at his workplace. A car then approached, and the driver, later identified as Reedijk, exited his vehicle and entered Sherman's vehicle. Reedijk stayed in Sherman's vehicle for approximately one minute before he returned to his vehicle and drove away. Sherman then immediately called the undercover agent and told him that he was prepared to complete their arranged sale, and the transaction was later completed as planned.

{¶ 4} In the meantime, a different agent with the task force maintained surveillance on Reedijk and a sheriff's deputy stopped Reedijk's vehicle. A subsequent search revealed that Reedijk had $2,000 cash on his person. Reedijk was then detained and advised of his *Miranda* rights. Reedijk told detectives that he had a residence in Michigan and one in Mason, Ohio, and that he had glass-blowing equipment at his Mason residence. However, Reedijk soon ended the interview by asking for his attorney.[2]

{¶ 5} Reedijk was arrested for drug possession, and the task force was granted a search warrant for Reedijk's Ohio residence. A search of the residence, a house belonging to Reedijk's father, revealed the presence of drugs. Reedijk was charged with two counts

---

2. We note that the affidavit relates that Reedijk informed the affiant that he stayed with his girlfriend in Michigan, but that he also had a residence in Mason, Ohio where he kept possessions. We also note the vehicle Reedijk was driving is registered with the Ohio Bureau of Motor Vehicles.

of aggravated trafficking in drugs, three counts of aggravated possession of drugs, trafficking in hashish, possession of hashish, possession of L.S.D., possession of marijuana, and two counts of possessing criminal tools. Some of the charges had accompanying forfeiture specifications.

{¶ 6} Reedijk filed a motion to suppress the evidence taken from his residence. Reedijk argued that the affidavit supporting the search warrant was insufficient and he also challenged the stop of his vehicle. In a bifurcated hearing, one trial court judge decided the issue of sufficiency of the affidavit and a different judge ruled on the remaining issues. Both trial courts denied Reedijk's motion to suppress, and Reedijk pled no contest to 11 of the charges, while the other charges were dismissed. The trial court sentenced Reedijk to an indefinite prison sentence between three to four-and-one-half years. Reedijk now appeals his convictions, raising the following assignment of error:

{¶ 7} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 8} Reedijk argues in his assignment of error that the trial court erred by denying his motion to suppress because the affidavit supporting the warrant lacked a sufficient basis.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Nelson*, 12th Dist. Clermont No. CA2017-08-042, 2018-Ohio-2819, ¶ 17. Thus, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*

{¶ 10} An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's

decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 11} The Fourth Amendment to the United States Constitution guarantees the right against unreasonable searches and seizures, and provides that warrants must be issued upon probable cause, supported by oath or affirmation, and particularly describe the place to be searched and the persons or things to be seized.

{¶ 12} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the judge or magistrate issuing the warrant is to simply "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. The issuing judge or magistrate is confined to the averments contained in the affidavit supporting the issuance of the search warrant. *State v. Moore*, 12th Dist. Fayette No. CA2017-11-023, 2018-Ohio-3122, ¶ 32.

{¶ 13} When reviewing the decision to issue a search warrant, neither a trial court nor an appellate court will conduct a de novo determination as to whether the affidavit provided sufficient probable cause. *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 21.[3] Instead, the duty of a reviewing court is limited to ensuring that the issuing judge or magistrate had a substantial basis for concluding that probable cause existed based on the information contained in the four corners of the affidavit filed in support of the warrant. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 13.

---

3. Reedijk relies solely upon federal law in his brief, and asserts that this court must perform a de novo review of the affidavit without deference to the issuing magistrate. However, such is not the law in Ohio, and the Ohio Supreme Court has determined that the Ohio Constitution affords "at least the same protection as the Fourth Amendment." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 13.

{¶ 14} Furthermore, in conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts must accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Id.* at ¶ 14. This court should therefore "not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317 (1983).

{¶ 15} Upon reviewing the agent's affidavit, we find it provided the necessary probable cause for the issuance of the search warrant. The affidavit provided that the affiant had been specially trained in drug enforcement, had served as an undercover narcotics agent, and was a member of the task force for 17 years. The affiant had received specialized training through the United States Drug Enforcement Agency and had written and executed multiple search warrants related to narcotic investigations.

{¶ 16} The agent further averred that the task force had been investigating Sherman, including several controlled buys that resulted in the task force obtaining ecstasy and cocaine from him. The agent explained in his affidavit that Sherman agreed to sell an undercover agent more ecstasy but had to first meet with his supplier to obtain a larger quantity of the drug. The affiant then described his observations regarding Sherman in the parking lot of his workplace and Reedijk pulling up and parking next to Sherman's vehicle. The affiant recalled his personal observations that Reedijk exited his vehicle and entered the passenger side of Sherman's vehicle where he stayed only a minute before exiting and returning to his own vehicle. Based on his training and experience, the affiant stated his belief that what he observed was a drug transaction between Sherman and Reedijk.

{¶ 17} The affiant also explained that after he observed the transaction between Sherman and Reedijk, Sherman contacted the undercover agent to tell him that he was ready to proceed with their planned sale. The affidavit then sets forth the details of the

interview with Reedijk after his traffic stop, as well as information obtained from the detectives' criminal history search of Reedijk, which demonstrated that Reedijk had a history of drug possession charges. The affiant also relayed that Reedijk told detectives that he had glass-blowing equipment at his residence. The affiant concluded that given his training and experience those involved with drug activity will "hide assets purchased from dealing drugs * * * at different locations at the residence to include out buildings."[4]

{¶ 18} The trial court found, and we agree, that this information from the affidavit provided probable cause to believe that evidence of a drug-related crime would be found at Reedijk's residence. Specifically, the affidavit contained detailed and identifiable indicia of criminal activity directly involving Reedijk and that he was involved in drug trafficking. Reedijk's indication to the affiant that he had possessions located at his Ohio residence creates a direct nexus between possible criminal activity and the place to be searched. So too did the affiant's statement that his training and experience led him to believe that assets purchased from drug deals would be hidden at different locations throughout Reedijk's residence.

{¶ 19} For the foregoing reasons, and deferring to the issuing judge's determination of probable cause, we find that the issuing judge had a substantial basis for concluding that probable cause existed in support of issuing a search warrant for the target residence.[5] Reedijk's single assignment of error is therefore, overruled.

---

4. While the concurrence places significance on Reedijk's possession of equipment for glass blowing at the residence, the admission of having *any* possessions at the Ohio residence only corroborates the home as Reedijk's residence and a place to be searched. Possessions at the house contributed to the already existing nexus between Reedijk's drug-related activity and why a search of his residence was supported by probable cause. The affiant averred that in his experience and training, drug dealers keep items at their home that are related to their drug sales. However, the same affiant did not aver anything particular regarding the type of equipment Reedijk possessed there. Affiant attached no significance in his affidavit to the presence of the glass blowing equipment at the residence, nor was it required.

5. Reedijk also argued that the detectives lacked good faith in executing the search warrant. However, given our finding that the affidavit provided probable cause sufficient to support the warrant, we need not address any exceptions to the warrant requirement.

{¶ 20} Judgment affirmed.

S. POWELL, J., concurs.

BYRNE, J., concurs separately.

**BYRNE, J., concurring separately.**

{¶ 21} My understanding is that in paragraph 18 the majority refers to "possessions" rather than "glass blowing equipment" because the majority does not believe that the specific possessions identified by Reedijk are significant. I disagree, because I do not believe it was Reedijk's acknowledgement that he had "possessions" in his residence that created a nexus between his residence and possible criminal activity. After all, one would expect any residence to have "possessions." Rather, it was Reedijk's spontaneous announcement that he had glass blowing equipment in his residence that was significant. Reedijk made his announcement about glass blowing equipment while he was being interviewed by detectives, and in that context, it appears that Reedijk was not simply—and randomly—sharing details about a hobby, but that he was aware that if police searched his home they would find drug paraphernalia, and he was attempting to preemptively explain away that drug paraphernalia. In this context, Reedijk's reference to glass blowing equipment created a direct nexus between possible criminal activity and the place to be searched.

{¶ 22} Therefore, I would amend the second-to-last sentence of paragraph 18 to state: "In the context in which it was said, Reedijk's indication to the affiant that he had glass blowing equipment—that is, equipment used in the manufacture of certain illegal drugs—located at his Ohio residence created a direct nexus between possible criminal activity and the place to be searched."

{¶ 23} For these reasons I respectfully concur in the judgment.

- 7 -