[Cite as *State v. Taste*, 2021-Ohio-3286.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-06-012 |
| | : | O P I N I O N |
| - vs - | | 9/20/2021 |
| | : | |
| DAMRICK L. TASTE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI 20190198

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, Assistant Prosecuting Attorney, for appellee.

Culp, Parsons, and Murray LLC, and Joshua W. Beasley, for appellant.

**PIPER, P.J.**

{¶ 1} Appellant, Damrick Taste, appeals a decision of the Madison County Court of Common Pleas denying his motion to suppress evidence that led to his conviction for failure to comply.

{¶ 2} Two Ohio State Highway Patrol troopers were together in a marked cruiser patrolling an area of Interstate 70 in Madison County. One trooper observed a Dodge

Durango pass their location bearing a rental sticker and having extremely dark tint on the windows. The trooper became suspicious because rental vehicles do not usually have tinted windows. The troopers began to follow the Durango and observed its driver commit a marked lane violation. The troopers then initiated a traffic stop of the Durango.

{¶ 3} The driver of the Durango pulled over to the side of the highway and stopped the vehicle. As one trooper approached the Durango, he observed two silhouettes in the vehicle, but was unable to see details regarding the driver and passenger because the window tint was too dark. The other trooper approached the driver's side of the vehicle and knocked on the window. At that time, the driver of the Durango, later identified as Taste, sped away.

{¶ 4} Other highway patrol troopers joined in the pursuit, which led the troopers onto multiple interstates, state routes, and highways. Eventually, the pursuit ended when the Durango hit a pickup truck. At that time, the occupants of the Durango exited the vehicle and fled on foot. Both were soon apprehended by the troopers, and Taste was given his *Miranda* rights and arrested on scene by one of the troopers. Sometime later, Taste answered some questions posed by a different trooper wherein he acknowledged being the driver of the Durango during the chase.

{¶ 5} Taste was indicted on one count of failure to comply, and pled not guilty. Taste filed a motion to suppress the statements he made to the trooper, which was denied by the trial court. Taste now appeals the trial court's decision to deny his motion to suppress, raising two assignments of error. Because the two assignments of error are interrelated, we will address them together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN NOT FINDING THAT THE APPELLANT HAD INVOKED HIS FIFTH AMENDMENT RIGHTS AND THAT THE AUTHORITIES FAILED TO

SCRUPULOUSLY HONOR THOSE RIGHTS.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS INCRIMINATING STATEMENTS OBTAINED IN VIOLATION OF *MIRANDA* AND *MOSLEY*.

{¶ 10} Taste argues in his assignments of error that his Fifth Amendment rights were violated and that the trial court erred by not granting his motion to suppress. During the motion to suppress hearing, the trial court and parties agreed that the issue was limited to whether Taste impliedly waived his *Miranda* rights by telling the trooper that he was driving during the chase. While Taste now reframes the argument by arguing that the troopers did not honor his invocation of rights, we find the issues sufficiently overlapping that we will address the arguments raised within Taste's brief. Either way, and regardless of how the exact argument is articulated, we find the trial court did not err in denying Taste's motion to suppress, as Taste never unambiguously invoked his rights so that the troopers were not required to forgo questioning.

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Nelson*, 12th Dist. Clermont No. CA2017-08-042, 2018-Ohio-2819, ¶ 17. Thus, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*

{¶ 12} An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *State*

*v. Reedijk*, 12th Dist. Warren No. CA2020-12-086, 2021-Ohio-2879.

{¶ 13} It is well established that before law enforcement officials interrogate a suspect in custody, the suspect must be advised of his or her *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence. *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449.

{¶ 14} To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* at ¶ 15, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus.

{¶ 15} A *Miranda* waiver need not be in writing to be valid. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755 (1979). Nor must the accused specifically state that he or she waives such rights. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S.Ct. 2250 (2010); *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 100-101. A court may infer a waiver from the suspect's behavior, viewed in light of all the surrounding circumstances. *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 11.

{¶ 16} Conversely, a suspect must articulate his desire to remain silent or to cut off questioning in a sufficiently clear manner such that a reasonable officer in the

circumstances would understand the statement to be an invocation of the right to remain silent. *State v. Murphy*, 91 Ohio St.3d 516, 520, 2001-Ohio-112. ("I'm ready to quit talking and I'm ready to go home, too," was not an unequivocal assertion of defendant's right to remain silent). If the suspect's words or conduct is equivocal, police may continue to question the suspect and need not attempt to clear up the ambiguity. *State v. Bird*, 12th Dist. Butler No. CA2002-05-106, 2003-Ohio-2541, ¶ 24.

{¶ 17} After reviewing the record, we find that the trial court did not err in finding that Taste had impliedly waived his *Miranda* rights by answering questions once he had been advised of his rights. The record indicates that Taste was apprehended quickly at the end of the chase. He was immediately read his rights and the trooper who administered such rights asked Taste whether he understood the rights as read. Taste acknowledged that he understood his rights. However, Taste did nothing to affirmatively or unambiguously assert that he was invoking his right to remain silent. Instead, Taste simply chose not to answer the trooper's initial questions.

{¶ 18} Rather than continue to question Taste, the trooper began to question Taste's passenger to try and ascertain his identity and whether the men had thrown anything from the car during the chase that the troopers needed to collect. Taste suggests that the trooper stopped questioning him because of his silence and that such silence was a clear invocation of his rights as demonstrated by the trooper moving on to question his passenger. However, the trooper testified at the motion to suppress hearing that he stopped asking Taste questions and only questioned Taste's passenger in order to ascertain whether something had been discarded during the chase. Moreover, the trooper testified that he did not continue to ask Taste questions because he was aware that other investigators would be questioning Taste in the near future. The trooper testified that his limited role involved only the arrest, advising Taste of his rights, and transporting Taste to the Highway Patrol post.

{¶ 19} A different trooper testified that while at the post, he spoke with Taste about an hour or two after Taste was arrested.  The trooper testified that he was aware that Taste had been given his rights and that Taste had not invoked his right to remain silent.  At that time, the trooper engaged in a conversation with Taste and asked why Taste had chosen to slow down at one point during the chase.  Taste responded to the trooper's question and told the trooper that his passenger had been frightened during the chase and worried that Taste's driving was "going to get us killed."

{¶ 20} The evidence established at the suppression hearing demonstrates that Taste had not unambiguously invoked his right to remain silent, and that his statements made to the trooper during their discussion were not coerced in any manner.  The evidence also clearly establishes that Taste was advised of his rights and acknowledged his understanding of them prior to answering the trooper's questions.  This is especially true where Taste declined to answer some questions, but voluntarily chose to answer others.  Despite Taste's initial silence, simply declining to answer a question does not imply an invocation of the right to remain silent.  Taste's behavior demonstrates an uncooperative attitude initially and a voluntary decision to answer some questions and not answer others.

{¶ 21} We also note that despite Taste's argument to the contrary, the troopers were not required to readvise Taste of his rights before speaking with him.  In support of his argument that he was entitled to a restatement of his rights, Taste relies upon *Michigan v. Mosley*, 423 U.S. 93, 96 S.Ct. 321 (1975).  In *Mosley*, the United States Supreme Court determined that police had not violated the appellant's Fifth Amendment rights where they gave the appellant a "fresh set of warnings" after a "significant period of time" had passed since officers first advised the appellant of his *Miranda* rights.

{¶ 22} When an individual who is properly given *Miranda* warnings is subsequently interrogated without being re-advised of his *Miranda* rights, the critical issue is whether that

individual remained aware of his or her rights at the time of the subsequent interrogation. *State v. Roberts*, 32 Ohio St. 3d 225, 232 (1987). When making that determination, courts must consider the totality of the circumstances, including: (1) the length of time between the giving of the first warnings and subsequent interrogation, (2) whether the warnings and the subsequent interrogation were given in the same or different places, (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, (4) the extent to which the subsequent statement differed from any previous statements, and (5) the apparent intellectual and emotional state of the suspect. *Id.*

{¶ 23} We find that the troopers did not need to issue Taste "fresh" warnings before engaging in a conversation with him. Instead, approximately two hours had passed between the arrest and the trooper's conversation with Taste and there is no indication that anything occurred during this brief time that would have made Taste forget his rights or not understand the warnings that had been previously acknowledged. *See State v. Rader*, 12th Dist. Butler No. CA2010-11-310, 2011-Ohio-5084, ¶ 13 (affirming denial of motion to suppress where approximately four hours passed between initial warnings and the appellant's statements); and *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577 ¶ 120 (finding no violation of rights even though more than 30 hours elapsed between the initial *Miranda* warnings and the appellant's second interview).

{¶ 24} While the first trooper issued warnings at a different location from where the subsequent conversation occurred with a different trooper, the record is undisputed that Taste remained in custody the entire time and that only approximately two hours passed. Taste had been specifically told that he had the right to remain silent, acknowledged his understanding of such rights, and had chosen to not answer some questions. However, at no time did Taste make an unequivocal invocation of rights as is required by the law. Instead, Taste chose to speak with the second trooper and acknowledged being the driver.

However, Taste's choice to answer the trooper's question did not require the trooper to readminister any warnings before speaking with Taste.

{¶ 25} After reviewing the record, we find that the trial court properly denied Taste's motion to suppress. As such, Taste's two assignments of error are overruled.

{¶ 26} Judgment affirmed.


M. POWELL and BYRNE, JJ., concur.