[Cite as *State v. Risner*, 2018-Ohio-1569.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                                   :

    Plaintiff-Appellee,                      :               CASE NO. CA2017-06-007

                                 :               O P I N I O N
- vs -                                                                      4/23/2018

                                 :

RONALD DEAN RISNER,                       :

    Defendant-Appellant.                     :


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-11146


Martin P. Votel, Preble County Prosecuting Attorney, Gractia S. Manning, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Wayne C. Staton, Timothy J. Meloy, 110 North Beech Street, Oxford, Ohio 45056, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Ronald Dean Risner, appeals from his convictions in the Preble County Court of Common Pleas for offenses related to a methamphetamine manufacturing operation at his home. For the reasons discussed below, this court affirms Risner's convictions.

{¶ 2} In December 2012, Pamela Bowling loaned her vehicle to Fred Perry. Perry

was supposed to return the vehicle a few hours later but did not. Pamela asked her son, Christopher, to find Perry and repossess the vehicle.

{¶ 3} On December 16, 2012, Christopher observed Perry driving Pamela's vehicle in Somerville, Ohio. Christopher followed the vehicle until Perry pulled into an address at 793 Oxford Germantown Road, in Camden, Ohio, which is Risner's residence. Christopher noted the address and left to get someone to transport him to the address so that he could drive away in Pamela's vehicle.

{¶ 4} Later, Christopher walked down the driveway and found Perry inside the vehicle. Christopher told Perry he was there to repossess the car and that Perry should remove any of his items from the car.

{¶ 5} Christopher observed Perry remove a box with gallon jugs, a small green tank, and a bag containing batteries and boxes of Sudafed. Perry set the items down outside a door leading to the garage. Christopher noted a "nasty" smell inside the vehicle. He deduced that a methamphetamine "cook" was underway at the residence.

{¶ 6} Christopher drove the vehicle away but was concerned that it may still have contraband inside so he contacted the Butler County Sheriff's Office and asked for a K-9 unit to inspect the automobile. The Butler County Sheriff's Office provided Christopher's information to the Preble County Sheriff's Office.

{¶ 7} Detective Dean Miller with the Preble County Sheriff's Office called Christopher immediately thereafter and Christopher relayed his observations. Detective Miller was familiar with the address because Risner had, five years earlier, been convicted of manufacturing methamphetamine at the residence. Detective Miller then obtained a search warrant, which he executed at the home the morning of December 17, 2012.

{¶ 8} Risner was home when law enforcement arrived to execute the warrant. Also present were Risner's girlfriend Christy Benge, Perry, and Perry's girlfriend. Deputies located

numerous items throughout the home and the home's garage associated with methamphetamine manufacturing, including crushed pseudoephedrine, containers of "pill sludge," lithium batteries, and anhydrous ammonia. Deputies found methamphetamine in a container in Risner's room. Numerous guns were also found on the property, although Risner was under a legal disability to own firearms. The Preble County Sheriff's Office arrested Risner and allowed the other three individuals to leave.

{¶ 9} In March 2013, in a superseding indictment, a Preble County grand jury indicted Risner with: count one, illegal manufacture of drugs, a violation of R.C. 2925.04(A), and a second-degree felony; count two, illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A), and a felony of third degree; count three, possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony; count four, having weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree; and count five, drug paraphernalia, a violation of R.C. 2925.14(C)(1), and a fourth-degree misdemeanor.

{¶ 10} Risner moved to suppress evidence collected from the search warrant, arguing that Detective Miller's affidavit contained insufficient facts to establish probable cause to issue the search warrant. In April 2013, the court denied Risner's motion and set the matter for trial. Risner and the state subsequently negotiated an agreed sentence and the court set a hearing for a change of plea. However, Risner failed to appear and the court issued a capias for his arrest. Risner successfully evaded capture by the authorities for nearly three years. Ultimately, the Preble County Sheriff's Office sought assistance from the U.S. Marshals Service. In October 2016, marshals captured Risner in nearby College Corner, Indiana.

{¶ 11} Risner's bench trial occurred in January 2017. The state introduced testimony from Christopher Bowling, Fred Perry, Detective Miller, and an agent from Ohio's Bureau of

Criminal Investigation who supervised the processing and disposal of the evidence at Risner's home. The state also introduced documentary evidence including numerous photographs taken at Risner's home and the laboratory test results of samples taken from alleged contraband at the home.

{¶ 12} Risner and Christy Benge testified in Risner's defense case. Risner admitted that the methamphetamine found in his bedroom was his and the guns were as well. However, Risner denied that he was involved in manufacturing methamphetamine and denied any knowledge that methamphetamine was being produced at his home. Risner claimed he was sick in bed and implied that Perry was responsible for the methamphetamine production at the home.

{¶ 13} The court found Risner guilty of all charges in the indictment and sentenced him to five years in prison. Risner appeals, raising two assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS.

{¶ 16} Risner argues that Detective Miller's affidavit contained insufficient facts to support a probable cause finding for the issuance of the search warrant. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Accordingly, a judge may issue a search warrant only upon a finding of probable cause in an affidavit or affidavits presented to the judge. Crim.R. 41(C). The affidavit must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief

- 4 -

that such property is there located." Crim.R. 41(C)(1). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2); *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 23.

{¶ 17} "In determining whether probable cause exists for the issuance of a warrant, courts employ a 'totality-of-the-circumstances' test, requiring an issuing judge 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Landis*, 12th Dist. Butler No. CA2005-10-428, 2006-Ohio-3538, ¶ 12, quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus.

{¶ 18} When reviewing the decision to issue a warrant, neither a trial court nor an appellate court will conduct a de novo determination as to whether the affidavit provided sufficient probable cause. *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 21. Rather, the reviewing court need only ensure that the issuing judge had a substantial basis for concluding that the probable cause existed based on the information contained in the four corners of the affidavit filed in support of the warrant. *Id.*; *State v. Akers*, 12th Dist. Butler No. CA2007-07-163, 2008-Ohio-4164, ¶ 14.

{¶ 19} In the affidavit, Detective Miller averred that the home was a small cottage located 100 yards behind a larger home at 793 Oxford Germantown Road in Camden, Ohio. The home was presently occupied by Risner, and possibly occupied by Fred Perry and a female named "Jamie." Detective Miller and the Preble County Sheriff's Office had, in 2007, executed a search warrant at the home, which resulted in Risner being convicted of illegal

manufacture of drugs.

{¶ 20} Detective Miller averred that he spoke with Christopher Bowling at approximately 11:00 p.m. on December 16, 2012. Bowling first called the Butler County Sheriff's Office to report drug activity. The Butler County Sheriff's Office then contacted Detective Miller and provided him with Bowling's information. Detective Miller called Bowling immediately.

{¶ 21} Bowling relayed that he had just been at the cottage to pick up his mother's car from Fred Perry, an acquaintance of his mother. Perry had a 2007 arrest for drug trafficking, was charged with felony drug possession in 2012, and had at least two other drug-related charges.

{¶ 22} When Bowling arrived at the property, he told Perry to remove Perry's possessions from the car. Bowling noticed Perry removing packages of pseudoephedrine tablets, paint thinner, and other bottles of unknown liquids or substances. Perry placed those items on the porch of the cottage. Bowling told Miller that he reported what he saw because his mother was "running around" with Perry and he was concerned for her welfare.

{¶ 23} The affidavit further stated that Detective Miller was trained in clandestine lab investigations with the Preble County Sheriff's Office and recognized the items described by Bowling as being some of the chemicals used in the manufacture of methamphetamines. Detective Miller opined that given the activity witnessed by Bowling it "is likely that a methamphetamine 'cook' is taking place or is imminent."

{¶ 24} This court concludes that Detective Miller's affidavit contained sufficient evidence to support a probable cause finding justifying the issuance of the search warrant. The affidavit indicated that Bowling reported observing some of the items necessary for the manufacture of methamphetamine, which were being loaded onto the porch of a residence where Detective Miller was aware that Risner lived. Risner had been previously convicted of

illegally manufacturing methamphetamine at the same residence. Moreover, Detective Miller was aware that Perry had a criminal background in drug possession and alleged trafficking.

{¶ 25} Risner argues that the affidavit contained no facts linking drug activity by Risner with the home. In this respect, Risner contends that it was Perry, not him, whom Bowling observed removing items believed to be related to manufacturing methamphetamine. Risner cites two cases where motions to suppress were ruled on favorably that he claims are analogous. *State v. Perez*, 2d Dist. Montgomery No. 26518, 2015-Ohio-1753; and *State v. Reniff*, 146 Ohio App.3d 749 (8th Dist.2001). In *Perez*, the court granted a motion to suppress where the affidavit in support of the search warrant failed to provide a nexus between the defendant's alleged drug trafficking activities and a storage locker. *Id.* at ¶ 20. The affidavit contained no evidence indicating that the defendant was using the storage locker to store contraband. *Id.* In *Reniff*, the court granted the motion to suppress evidence recovered pursuant to a search warrant for an apartment where the only evidence connecting the apartment to illegal narcotics was that the apartment's owner had conversations with or visited another man in the same apartment who was trafficking drugs. *Id.* at 755.

{¶ 26} Unlike these cases, Detective Miller's affidavit provided a clear nexus between alleged drug activity and Risner's residence. As discussed, Bowling reported seeing items used in the manufacture of methamphetamine placed on the porch of Risner's cottage by a person known to be involved in drug-related activities. And, Detective Miller stated in his affidavit that Risner had used the premises previously in conjunction with the manufacture of methamphetamine.

{¶ 27} Risner also argues that the affidavit was deficient in that it was based entirely on information from Bowling, which Detective Miller did not independently verify. A tip from an anonymous informant is not considered inherently reliable, thus generally requiring some

independent police corroboration. *State v. Abercrombie*, 12th Dist. Clermont No. CA2001-06-057, 2002-Ohio-2414, ¶ 14. However, a tip from an identified citizen based on the citizen's personal observations may be considered highly reliable. *Id.* "If an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates*, 462 U.S. 213, 233-234, 103 S. Ct. 2317 (1983). Bowling identified himself to law enforcement when reporting what he personally observed. Moreover, Bowling's report was consistent with Detective Miller's knowledge of past drug activity at the premises. Accordingly, we find that Bowling's tip was sufficiently reliable that independent corroboration was unnecessary. Based upon our review of the affidavit, the trial court had a substantial basis for concluding that probable cause existed in support of issuing a search warrant. This court therefore overrules Risner's first assignment of error.

{¶ 28} Assignment of Error No. 2:

{¶ 29} APPELLANT'S CONVICTIONS FOR MANUFACTURING OF [METHAMPHETAMINES] AND POSSESSION OR ASSEMBLY OF CHEMICALS FOR THE MANUFACTURE OF [METHAMPHETAMINES] WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 30} Risner argues that the state failed to present sufficient evidence to establish that he knowingly engaged in the illegal manufacture of methamphetamines and illegal assembly or possession of chemicals for the manufacture of methamphetamines and otherwise argues that his convictions were against the manifest weight of the evidence. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant inquiry

is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 31} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 15. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 32} The court found Risner guilty of illegal manufacture of drugs in violation of R.C. 2925.04(A), which provides, "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." The court also convicted Risner of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), which provides, "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶ 33} The Revised Code defines the culpable mental state of knowingly as:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 34} Detective Miller testified at trial that he was trained in the investigation of methamphetamine laboratories. He identified the necessary elements to produce methamphetamine, which include pseudoephedrine, a solvent (e.g., paint thinner or mineral spirits), lithium metal, and anhydrous ammonia.

{¶ 35} Detective Miller testified that upon executing the search warrant, he quickly determined that a methamphetamine manufacturing process was ongoing in the home. Officers located a can of mineral spirits in a bag outside the home. In the kitchen, officers found mineral spirits, coffee grinders containing ground or crushed pseudoephedrine, two pitchers containing a "pill sludge," i.e., crushed pseudoephedrine soaking in a liquid, and an electronic pH tester in a glass jar sitting in a small amount of liquid. In the living room area, officers located a small amount of methamphetamine, a bag that contained a pH test kit, empty blister packs of various pseudoephedrine brands, and numerous receipts for pseudoephedrine purchases at local pharmacies. In a desk, officers found a digital scale and packets of unboxed pseudoephedrine tablets in blister packs that were wrapped together in tape. In Risner's garage, officers located a container with what they believed was dry pill sludge, a 40-pound propane cylinder with modified valves filled with anhydrous ammonia, and a device that was likely used to manufacture the anhydrous ammonia. In Risner's bedroom, officers found a container filled with lithium batteries, a container of "MSM" which is

a livestock supplement commonly used as a cutting agent for methamphetamine, and a container with two grams of methamphetamine.

{¶ 36} Several items recovered from Risner's home were sent to the Miami Valley Regional Crime Laboratory to confirm whether they were contraband. The powder in one of the coffee grinders tested positive for pseudoephedrine. Liquid from one of the pitchers in the kitchen containing the "pill sludge" tested positive for methamphetamine and a petroleum distillate, such as mineral spirits. Detective Miller also noted that a police scanner was found hanging on a curtain rod and the home had an exterior video surveillance system installed.

{¶ 37} Detective Miller testified that Risner had $2,075 on his person when he was arrested. Detective Miller further confirmed that Risner was previously found guilty of illegal manufacture of drugs in 2007.

{¶ 38} Special Agent Dwight Aspacher testified that he worked for Ohio's Bureau of Criminal Investigation and his duties involved the investigation, processing, and mitigation of clandestine drug laboratories. Agent Aspacher responded to Risner's home to assist Detective Miller and other emergency responders with processing and safely disposing of the evidence. Agent Aspacher testified that the pitcher containing a pill sludge found in the kitchen indicated an ongoing and active methamphetamine manufacturing process that was "close to the end." Agent Aspacher opined that the pill sludge had been mixed within the previous ten hours. The material found in the container in the garage was "pill waste" from earlier methamphetamine productions. Agent Aspacher testified that it was unlikely that this was a mobile methamphetamine operation because of the items recovered at the scene.

{¶ 39} In his case-in-chief, Risner testified that on the night of December 16 he was in bed asleep. His girlfriend came into the bedroom and told him that a vehicle drove down the driveway and parked near the garage. Risner looked at his video monitor, saw a sport utility vehicle, and recognized Fred Perry sitting in the vehicle's driver seat and an unknown female

in the passenger seat. Both Perry and the female passenger were asleep. Risner decided he would ask Perry what he was doing in the morning and went back to sleep.

{¶ 40} Approximately two hours later, Risner awoke to a noise and saw a car driving away. He spoke with Perry and asked him what happened. Perry told him "they came to pick up a car." Risner then responded, "well, I'm going back to sleep, I'm sick." Risner did not invite Perry into his home. He then went back to his home, shut the door, and went to bed. The next morning there was a knock at the door, he opened the door, and invited Detective Miller into the home.

{¶ 41} Risner claimed that he only discovered that Fred Perry was in his home when he woke up that morning to answer Detective Miller's knock. Risner denied knowledge that methamphetamine was being manufactured at his home. Risner admitted that there was methamphetamine in his room. He was not using methamphetamine but had received it from someone as a form of payment.

{¶ 42} Risner was aware of the container in the garage that contained what Detective Miller and Agent Aspacher testified was probably a dry pill sludge. Risner stated that it was not a pill sludge but was fertilizer that he intended to use in a flower bed. Risner also stated that the device that Detective Miller testified was being used to manufacture anhydrous ammonia was actually being used in conjunction with a vehicle project involving Freon. With respect to the can of mineral spirits located outside the home, Risner testified that Perry told him that the can was his. Benge testified and denied knowledge of any methamphetamine-related items in the home.

{¶ 43} We conclude that Risner's convictions for illegal manufacture of drugs and illegal assembly of chemicals for drug manufacturing were supported by the manifest weight of the evidence. Finished methamphetamine and all the necessary chemicals to manufacture methamphetamine were located throughout Risner's small cottage home. The

evidence also showed that a methamphetamine manufacturing operation was active and had been going on for sufficiently long to build up a supply of dry pill waste. The evidence, if believed, demonstrated that Risner knowingly manufactured or otherwise engaged in *any part* of the production of methamphetamine and that Risner knowingly assembled or possessed one or more chemicals used to manufacture methamphetamine. The trial court sitting as the factfinder was free to find Risner not credible and reject his version of events, which was essentially that, unbeknownst to him, Perry invited himself into Risner's home, and, in one night, set up a methamphetamine manufacturing operation in various parts of the home. *See State v. Hill*, 75 Ohio St.3d 195, 205 (1996).

**{¶ 44}** Risner argues that the state failed to establish that an active methamphetamine production was ongoing at his home between December 15 and 17, 2012. Risner claims that there was only dry pill sludge present at the home that would have been more that several days old. Initially, we note that this argument conflicts with Risner's claim that the dry pill sludge was fertilizer that he intended to put on his flower bed. Regardless, there was evidence that methamphetamine manufacturing was recent, i.e., Agent Aspacher opined that the pill sludge found in one of the pitchers, which tested positive for methamphetamine, was less than ten hours old and that the manufacturing process was "active."

**{¶ 45}** Risner also argues that the methamphetamine in production could have been produced elsewhere and transported to the home by Perry. This court agrees that the evidence would suggest that Perry was also involved in the production of methamphetamine. However, the evidence does not support the conclusion that Risner was uninvolved in any part of the process simply because Perry was the only person seen handling some of the items necessary to produce methamphetamine. Our decision with respect to the weight of the evidence is also dispositive of the issue of sufficiency. *Jones*, 2013-Ohio-150 at ¶ 19.

Consequently, this court overrules Risner's second assignment of error.

**{¶ 46}** Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.