[Cite as *State v. Bedsole*, 2022-Ohio-3693.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2021-09-089<br>CA2021-09-090 |
| | : | |
| - vs - | | O P I N I O N<br>10/17/2022 |
| | : | |
| DOUGLAS BEDSOLE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 21CR37747 and 21CR38007


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.



**HENDRICKSON, J.**

{¶1} Appellant, Douglas Bedsole, appeals the decision of the Warren County Court of Common Pleas denying his motion to suppress evidence in Case No. 21CR37747, and finding him guilty as charged in Case No. 21CR38007. For reasons discussed below, we affirm the trial court's rulings.

**Facts and Procedural History**

{¶2} The facts and procedural history of this appeal stem from two different criminal

cases which were consolidated sua sponte by this Court.[1] We will recite the facts of each case then address appellant's respective assignments of error accordingly.

**Case No. 21CR37747**

**{¶3}** On November 25, 2020, Detective Nicholas Behymer, of the Warren County Sheriff's Office, was investigating a South Lebanon vehicle theft and a Deerfield Township burglary. When the stolen vehicle associated with the crimes was located, Detective Behymer recovered DNA from cigarette butts found in the vehicle. At some point after submitting the evidence for testing, Detective Behymer was informed of a DNA match with appellant. On February 1, 2021, Detective Behymer submitted an application for a search warrant for a buccal swab of appellant, as well as a supporting affidavit, in an effort to confirm appellant's identity as the perpetrator.

**{¶4}** On February 2, 2021, Detective Behymer submitted an additional application for a search warrant for real-time Global Positioning System ("GPS") data from appellant's cell phone, along with a supporting affidavit. Substantial portions of the facts section of the affidavit were copied directly from the February 1 affidavit. The judge approved the search warrant. Meanwhile, on January 24, 2021, an arrest warrant was issued for appellant based upon a charge of grand theft auto. Detective Behymer later testified that he had become aware of the arrest warrant at some point before applying for the cell phone data warrant. However, he failed to include this information in his affidavit.

**{¶5}** Based upon information provided by AT&T pursuant to the cell phone data search warrant, Detective Behymer received historical cell phone location data that enabled him to determine that appellant was in the vicinity of Hyde Park or Oakley, in Hamilton

---

1. Additionally, appellant was charged in a third case, Case No. 21CR38010. However, that case and those facts are not subject to this appeal, and we consequently do not address the case in this opinion.

County, Ohio. Officers determined that appellant's sister lived in that area, and procured information including a description of her vehicle and residence. Lieutenant Chris Peters and Sergeant Brian Hounshell were dispatched to appellant's sister's address pursuant to both the historical cell phone GPS data and live cell phone GPS updates that were being sent to Detective Behymer. The officers observed an individual who appeared to match appellant's description get into a vehicle with a woman and drive onto the interstate. Detective Behymer then received cell phone GPS data updates which matched the vehicle's path up Interstate 71. Lieutenant Peters and Sergeant Hounshell followed the vehicle to Warren County.

{¶6} The officers checked the vehicle's license plate and determined that it was stolen. They directed other officers to initiate a traffic stop. When the law enforcement vehicle activated its lights, Lieutenant Peters testified that he saw an object flung from the passenger window of the vehicle being pursued. On stopping to investigate, he found that it was a handgun. Appellant was arrested and subsequently indicted on two counts of having a weapon while under disability, two counts of tampering with evidence, one count of improperly handling a firearm in a motor vehicle, one count of carrying a concealed weapon, and one count of possessing drug abuse instruments.

{¶7} On August 7, 2021, appellant filed a motion to suppress, alleging that the affidavit was deficient because it failed to connect appellant's cell phone number to him. At the suppression hearing, Detective Behymer testified that he learned that the cell phone number belonged to appellant "through speaking with other people that know [appellant]" who "provided [him] with a phone number and the location of his sister's residence." However, he admitted that he failed to disclose that information or the identities of those who assisted him when obtaining the warrant. Lieutenant Peters, who was Detective

Behymer's supervisor, testified that appellant's wife was the source of the cell phone number, but her involvement was intentionally withheld to protect her identity.

{¶8} On September 1, 2021, the trial court issued a written decision denying the motion. The trial court found that there was probable cause to support the search warrant, noting that while the affidavit and search warrant were "inartful at times," there was "ample evidence upon which to conclude [appellant] had committed a crime." On September 9, 2021, appellant pled no contest to the offenses as charged. He was sentenced to a total of twenty-four months in prison, to be served consecutively to the sentence imposed in Case No. 21CR38007. Appellant now appeals the denial of his suppression motion, raising one assignment of error.

**Case No. 21CR38007**

{¶9} On the evening of December 8, 2020, corrections officers Heilyse Ventura and Josh Hartmann were on duty at the "B pod" at the Warren County Jail, where appellant was then incarcerated. Following observation that aroused their suspicion, they conducted a drug investigation in cell 107, sending the inmates to have body scans administered. During a search of the cell, Officer Ventura received information that there were drugs in cell 117, where appellant was staying, and more specifically, that appellant had drugs. Cell 117 is directly across from cell 107 and visible therefrom. Following the tip, appellant and his cellmate were handcuffed and sent to have body scans administered. No drugs were subsequently found in appellant's cell.

{¶10} Sergeant Larry Laird performed a body scan of appellant and detected an abnormality near his genitals that was inconsistent with "naturally occurring anatomy." Lieutenant John Denniston agreed with Sergeant Laird's finding and a strip search of appellant was then conducted. Appellant was ordered to remove his clothing, squat, and

cough. He did so and the officers observed a black object between his buttocks. At the officers' request, appellant produced the object and informed the officers that it was marijuana. He was once again instructed to squat and cough, at which point the officers observed a green object emerge from his rectum. When he was asked what it was, appellant stood up, denied having anything, and was observed by the officers to push it back into his rectum using his middle finger.

{¶11} Sergeant Laird continued to press appellant, who continued to deny having anything else. Appellant was restrained, and Sergeant Laird contacted Detective Brian Lewis to prepare a search warrant to conduct a body cavity search. The jail's policy dictates a two-hour limit on the use of the restraint chair for an inmate, so after two hours, appellant was removed from the chair. As appellant stood up, Sergeant Laird observed a small "silicone or plastic container" fall from appellant's gown onto the ground. Following a second body scan and strip search, officers thought they saw an additional black object in appellant's rectum. However, no further objects were discovered. Laboratory results confirmed that the contents of the first container removed from appellant's rectum were cannabinoids and the contents of the second container, which had fallen, were opioids. Appellant was transported to the hospital for the body cavity search, which did not produce any further drugs.

{¶12} On May 3, 2021, appellant was indicted on one count of tampering with evidence, one count of aggravated possession of drugs, and one count of possession of drugs. The matter proceeded to a bench trial on August 26, 2021. At trial, the court heard testimony from Officer Ventura, Officer Hartmann, Sergeant Laird, and appellant himself. Appellant took exception to the officers' testimony that he pushed the green container into his anus, testifying "I did not shove nothing up my ass." He testified that he had merely

placed the drugs between his buttocks, as opposed to within his rectum, that he had done so "for safekeeping," and that he had kept the drugs between his buttocks for at least a day before they were discovered by the officers. As such, he argued that because the drugs were concealed before the officers' investigation began, the state was unable to prove they were placed there for the purpose of impeding an investigation.

{¶13} The trial court found appellant guilty of all counts. Appellant was sentenced to twelve months in prison on each count, to be served concurrently to each other and consecutively to the sentence imposed in Case No. 21CR37747, for a total of thirty-six months in prison between the two cases. Appellant now appeals the verdict, raising one assignment of error.

{¶14} Assignment of Error No. 1:

{¶15} THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION TO SUPPRESS.

{¶16} In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress the search of his cell phone in Case No. 21CR37747. In support of this claim, appellant argues that the search warrant affidavit submitted by Detective Behymer was insufficient to establish the requisite probable cause necessary for the issuance of the search warrant. Specifically, appellant argues that (1) the affidavit failed to establish the necessary nexus between the cell phone number and the and criminal behavior, and (2) the affidavit failed to provide any facts as to the veracity or basis of knowledge of the person supplying the cell phone number. We disagree.

**Law and Standard of Review**

{¶17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Pallo*, 12th Dist. Clermont No. CA2019-12-105, 2020-

- 6 -

Ohio-4182, ¶ 16. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Abner*, 12th Dist. Warren No. CA2021-05-048, 2021-Ohio-4549, ¶ 12. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Wilson*, 12th Dist. Butler No. CA2019-08-141, 2020-Ohio-3227, ¶ 16. An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *State v. Kirk*, 12th Dist. Clermont No. CA2019-07-053, 2020-Ohio-323, ¶ 9.

{¶18} Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures.[2] *State v. Walton*, 12th Dist. Butler No. CA2020-12-124, 2021-Ohio-3958, ¶ 9. As the Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶19} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay

---

2. The Ohio Supreme Court has held that in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United States Constitution. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 16. Appellant brings his claims under both constitutions, and all analysis herein reflects both documents. *See State v. Caldwell*, 12th Dist. Butler No. CA2021-02-017, 2021-Ohio-3777, ¶ 16, fn.3.

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Collins*, 12th Dist. Preble No. CA2016-09-009, 2017-Ohio-4371, ¶ 23. The issuing judge or magistrate is confined to the averments contained in the affidavit supporting the issuance of the search warrant. *State v. Reedjik*, 12th Dist. Warren No. CA2020-12-086, 2021-Ohio-2879, ¶ 12.

{¶20} Thus, in determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances. *State v. Moore*, 12th Dist. Fayette No. CA2017-11-023, 2018-Ohio-3122, ¶ 32. The duty of a reviewing court is simply to ensure that the issuing judge or magistrate had a substantial basis for concluding that probable cause existed based on the information contained in the four corners of the affidavit filed in support of the warrant. *State v. Nelson*, 12th Dist. Clermont No. CA2017-08-042, 2018-Ohio-2819, ¶ 19. Furthermore, in conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts must accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *State v. Shoults*, 12th Dist. Fayette No. CA2018-05-009, 2019-Ohio-1400, ¶ 17. Therefore, when reviewing the decision to issue a warrant, neither a trial court nor an appellate court will conduct a de novo determination as to whether the affidavit provided sufficient probable cause. *State v. Risner*, 12th Dist. Preble No. CA2017-06-007, 2018-Ohio-1569, ¶ 18.

**Analysis**

{¶21} In the case sub judice, the trial court found that there was probable cause to support the cell phone search warrant. "While the affidavit and search warrant are inartful at times," the trial court concluded that "there is ample evidence upon which to conclude

the Defendant had committed a crime." The trial court further found that "it is not necessary that the particular phone or phone number be associated with that crime," but that "[i]t is sufficient that there is probable cause the Defendant has violated the law and the data associated with the cell phone number will assist in ascertaining the Defendant's whereabouts." We agree with the trial court's reasoning.

**{¶22}** Detective Behymer averred in his affidavit that "it is necessary to obtain the real-time GPS or cell site and sector location information, or location data demonstrating the physical whereabouts of any mobile electronic device associated with telephone number *(513-496-8322)* for a 60 day period * * *." (Emphasis and bold sic.) In the same paragraph, Detective Behymer averred that such information was necessary "in order to ascertain the location of the individual in possession of *(Douglas Bedsole)* cell phone." (Emphasis and bold sic.) While it is true that the affidavit does not contain information regarding how the cell phone number is connected with appellant, it makes clear that the cell phone number is associated with appellant. Earlier in the affidavit, Detective Behymer had already given sufficient information to establish probable cause that appellant had committed a crime, reciting the facts associated with the February 1 buccal swab search warrant affidavit which established that appellant stole multiple vehicles. Here, Detective Behymer made clear that the warrant would assist in the apprehension of a criminal suspect.

**{¶23}** The affidavit in support of a search warrant must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C)(1). Detective Behymer does exactly that in his affidavit. The affidavit to the warrant

- 9 -

identified with specificity the placed to be searched, i.e., the cell phone associated with the number 513-496-8322. It described with particularity the property to be seized, i.e., "the real-time GPS or cell site and sector location information, or location data demonstrating the physical whereabouts of any mobile electronic device associated" with that number. It described in detail appellant's connection to the crime being investigated and the specific facts supporting his identity as the perpetrator of that crime. And it represented that Detective Behymer had good cause to believe that real-time GPS or cell site and sector location information would demonstrate the physical whereabouts of the cell phone "in order to ascertain the location of the individual in possession of (Douglas Bedsole) cell phone," and that AT&T was in possession of that information.

**{¶24}** However, after reviewing the affidavit, we find there was a lack of particularity as to the reliability of the complainant, specifically with regard to the source or basis of the complainant's information regarding the cell phone number. *See State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 66. It is unclear why Detective Behymer did not note in his affidavit that he received the source from appellant's wife, or at least from a confidential informant. Nonetheless, the failure to note the source of the phone number does not defeat probable cause as we are unconcerned with whether individual facts supply probable cause. *Id.* Rather, it is the totality of the circumstances which control. *Risner*, 2018-Ohio-1569, at ¶ 17. Having reviewed the information set forth in Detective Behymer's affidavit, we conclude that the affidavit set forth sufficient information such that the issuing judge had a substantial basis for concluding that probable cause existed to believe that appellant had committed a crime, and appellant's real-time cell phone location information would assist in his apprehension. *See Nelson*, 2018-Ohio-2819, at ¶ 19.

**{¶25}** Additionally, we need not reach the good-faith exception to the exclusionary rule because "'[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *State v. Commins*, 12th Dist. Clinton Nos. CA2009-06-004 and CA2009-06-005, 2009-Ohio-6415, ¶ 25, quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695 (2009). We find that there is no evidence that Detective Behymer was acting deliberately in his failure to note the source of his knowledge regarding appellant's cell phone number. As such, the exclusionary rule does not apply, and consideration of the good-faith exception to that rule is immaterial to our analysis.

**{¶26}** Appellant's first assignment of error is overruled.

**{¶27}** Assignment of Error No. 2:

**{¶28}** BEDSOLE'S TAMPERING WITH EVIDENCE CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE NOR THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶29}** In his second assignment of error, appellant argues that his conviction for tampering with evidence in Case No. 21CR38007 is not supported by sufficient evidence and is against the manifest weight if the evidence. Once again, we disagree.

### Standard of Review

**{¶30}** Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Tolle*, 12th Dist. Preble No. CA2020-10-015, 2021-Ohio-3401, ¶ 9. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 12. The relevant inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Terry*, 12th Dist. Warren No. CA2021-04-029, 2021-Ohio-4043, ¶ 9.

**{¶31}** "Unlike a challenge to the sufficiency of the evidence, a manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *State v. Moore*, 12th Dist. Fayette No. CA2020-09-016, 2021-Ohio-1856, ¶ 13, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. McMurray*, 12th Dist. Preble No. CA2020-08-013, 2021-Ohio-3562, ¶ 11.

**{¶32}** An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-01-002, 2021-Ohio-4116, ¶ 35. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Worship*, 12th Dist. Warren No. CA2020-09-055, 2022-Ohio-52, ¶ 34.

**Law and Analysis**

**{¶33}** Appellant argues that the tampering with evidence conviction in Case No.

- 12 -

21CR38007 was not supported by sufficient evidence. R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶34} "A conviction for tampering with evidence requires 'proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding.'" *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 39, quoting *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. "'Likelihood is measured at the time of the act of alleged tampering.'" *State v. Wallace*, 12th Dist. Fayette No. CA2015-09-019, ¶ 12, quoting *Straley* at ¶ 19. "Tampering with evidence requires a person to act with purpose, meaning the person has a specific intention to cause a certain result." *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 51.

{¶35} We begin our analysis by noting that the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. *State v. Altman*, 12th Dist. Clermont No. CA2021-12-071, 2022-Ohio-2380, ¶ 15. It is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact. *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 26. The trial court, as the trier of fact, is free to believe all, part, or none of the testimony of any witness who appears before it. *State v. Cephas*, 12th Dist. Butler No. CA2021-05-051, 2021-Ohio-4356, ¶ 13.

{¶36} Viewing the evidence in the light most favorable to the prosecution, it is clear

from the facts that appellant's efforts to conceal the drugs satisfy the definition of tampering with evidence. Appellant argues that he had kept the drugs between his buttocks for at least a day before they were discovered by the officers, and therefore, the state was unable to prove they were placed there for the purpose of impeding an investigation. Although appellant may have placed the drugs between his buttocks or within his rectum prior to the officers instituting their investigation, the very fact of appellant's incarceration in a jail where officers testified that drug searches regularly occur means that appellant knew an investigation was "likely to be instituted." This is corroborated by appellant's own testimony that he placed the drugs between his buttocks "for safekeeping and to prevent anyone else from getting them." "Anyone else" in this instance includes officers conducting routine investigations.

{¶37} Additionally, viewing the evidence in the light most favorable to the prosecution, even supposing appellant's initial concealment of drugs in his rectum or between his buttocks does not constitute tampering, his reinsertion of the drugs as they began coming out does. Officers testified that during their investigation, a second container of drugs emerged from appellant's anus, and when he was asked what it was, appellant stood up, denied having anything, and was observed by the officers to push it back into his rectum using his middle finger. While appellant denies this occurred, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *see also State v. Jackson*, 12th Dist. Butler No. CA2001-10-239, 2002-Ohio-4705, ¶ 48 ("A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact"). In a bench trial, the trial court acts as the

factfinder and determines both the credibility of the witnesses and the weight of the evidence. *State v. Hensley*, 12th Dist. Butler No. CA2021-04-040, 2021-Ohio-3702, ¶ 29. Here, the trial court, as factfinder, determined that the officers were credible, and appellant was not.

{¶38} In making its decision which witnesses to believe and which to disbelieve, the trial court did not lose its way or create a manifest miscarriage of justice. After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that appellant's conviction for tampering with evidence is not against the manifest weight of the evidence and was therefore supported by sufficient evidence. As such, appellant's second assignment of error is also without merit and therefore overruled.

{¶39} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.